IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| NEAL RANCH, BY AND THROUGH LYLE NEAL,<br><br>Plaintiff,<br><br>vs.<br><br>DOUG BURGUM, in his official capacity as SECRETARY OF THE US DEPARTMENT OF INTERIOR; BRYAN MERCIER, in his official capacity as DIRECTOR OF BUREAU OF INDIAN AFFAIRS; UNITED STATES OF AMERICA; and UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS,<br><br>Defendants. | CV 26-16-BLG-SPW<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION |

Plaintiff Neal Ranch, by and through Lyle Neal ("Neal Ranch" or the "Ranch"), engages in the practice of farming and receives irrigation water from the Crow Irrigation Project (or the "Project"), an irrigation system managed by the Bureau of Indian Affairs ("BIA") and authorized by statute. Neal Ranch brings this Federal Tort Claims Act ("FTCA") suit for damages allegedly arising from the BIA's negligent failure to maintain ditch irrigation and to deliver water. (Doc. 1).

Defendants Doug Burgum, Bryan Mercier, the United States of America, and the BIA (collectively, "Defendants") have moved to dismiss the action for lack of

subject-matter jurisdiction (Doc. 5), arguing that the claims are either contractual or statutory in nature, and therefore cannot be litigated in this Court under the FTCA. (Doc. 6 at 2).

The Motion is fully briefed and ripe for the Court's review. (*See* Docs. 5, 6, 11, 14). For the following reasons, the Court grants the Motion.

## I. Background

The Crow Irrigation Project is a federal irrigation system located within the exterior boundaries of the Crow Indian Reservation. (Doc. 1 at 1). Managed by the BIA, the Project supplies agricultural water from various rivers and creeks to support tribal and non-tribal landowners, including Neal Ranch. (*Id.* at 3). "[T]he water received from the . . . Project is a critical water source . . . supporting [the] Ranch's production of irrigated hay and pasture essential for both summer feed and grazing of . . . livestock." (*Id.*).

For context, the BIA's obligations to landowners under BIA-administered irrigation projects like the Crow Irrigation Project arise from a combination of federal statutes and regulations. Individuals who own or lease land may request irrigation water from the Project. 25 C.F.R. § 171.200. The amount of water received is based on the land operator's "request, . . . legal entitlement to water, and the available water supply." *Id.* § 171.205. The BIA bills and collects an annual

operation and maintenance assessment from individuals who own or lease land within the Project. *Id.* §§ 171.500–171.575.

Beyond water delivery, the BIA's obligations extend to the proper operation and maintenance of the Project's infrastructure. The BIA is responsible for building, operating, maintaining, rehabilitating, and removing structures on the Project. *Id.* § 171.400; (Doc. 1 at 4). It is BIA policy to "construct, operate, maintain and rehabilitate Indian Irrigation Projects in accordance with applicable technical and safety standards." Bureau of Indian Affairs, U.S. Dep't of the Interior, Indian Affairs Manual, 50 IAM 1 at 1 (2018); (Doc. 1 at 4). In this case, Neal Ranch "paid [its] [o]peration and [m]aintenance fees on all irrigable lands and complied with all state and federal law and regulations." (Doc. 1 at 5).

The Ranch alleges that "[i]n August 2017, a portion of the [Project's] canal and ditch system . . . was seriously damaged as a result of delayed maintenance coupled with a small landslide." (*Id.*). The BIA shut off the irrigation water, which resulted in the loss of water to downstream locations, including Neal Ranch. (*Id.*). According to the Ranch, the BIA did not conduct any repairs to the damaged system in 2017. The Ranch alleges that the BIA "patched" the system with a temporary culvert in 2018, allowing some irrigation water to flow until 2020. (*Id.*).

However, sometime in 2020, the Ranch alleges that the temporary culvert failed and resulted in the system's permanent shutoff. (*Id.*). As a result, the Ranch

did not receive irrigation water in 2021. (*Id.*). In late 2021, the BIA began repair work on the damaged sections and ultimately completed repairs before the start of the 2022 irrigation season. (*Id.* at 7). Neal Ranch maintains that as a result of the lost water flow between 2017 and 2020, it suffered crop-loss damages, livestock-loss damages, and a decrease in property value in the sum of $958,567.49. (*Id.* at 8–21).

After exhausting administrative remedies, the Ranch filed its Complaint against Defendants in this Court alleging 12 counts of negligence and negligence per se under the FTCA.

## II. Legal Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). Federal Rule of Civil Procedure 12(b)(1) allows defendants to raise the defense of the court's "lack of subject-matter jurisdiction" by motion.

Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack that a complaint's allegations are insufficient to establish subject-matter jurisdiction, or (2) a challenge beyond the allegations that attacks the factual basis for subject-matter jurisdiction. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733

(9th Cir. 1979). "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Acosta v. United States*, No. 05-CV-1192, 2007 WL 1655524, at *3 (D. Or. May 31, 2007) (citation omitted). Alternatively, "[i]f a party factually attacks subject[-]matter jurisdiction, then no presumptive truthfulness attaches to the factual allegations in the complaint." *Id.* Under those circumstances, "a court has wide discretion to allow additional evidence in order to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* (citing *Biotics Rsch. Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983)).

**III. Discussion**

"As sovereign, the United States 'can be sued only to the extent that it has waived its immunity' from suit." *O'Toole v. United States*, 295 F.3d 1029, 1033 (9th Cir. 2002) (quoting *United States v. Orleans*, 425 U.S. 807, 814 (1976)). Absent a waiver of sovereign immunity, a court lacks subject-matter jurisdiction over a plaintiff's claims. *Harger v. Dep't of Labor*, 569 F.3d 898, 903 (9th Cir. 2009).

The FTCA waives the United States' immunity and provides governmental liability for "tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Federal district courts are granted jurisdiction for such claims where the government "would be liable . . . in accordance with the law of the place where the act or omission occurred." *Id.* § 1346(b)(1). Thus, a district court has jurisdiction over and "the federal government

assumes liability for wrongs that would be actionable in tort if committed by a private party under analogous circumstances, under the law of the state where the act or omission occurred." *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989), *abrogated in part on other grounds by*, *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117 (9th Cir. 2019).

The Tucker Act also carves out a limited waiver of the United States' sovereign immunity over "any claim against the United States founded . . . upon . . . any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). Unlike the FTCA, however, the Tucker Act confers exclusive jurisdiction to the Court of Federal Claims for contract claims exceeding $10,000. *Id.*; 18 U.S.C. § 1346(a)(1); *McGuire v. United States*, 550 F.3d 903, 910–11 (9th Cir. 2008).

By their Rule 12(b)(1) Motion, Defendants argue that the gravamen of Neal Ranch's claims is based in contract liability, not tortious conduct. Because the Tucker Act would provide the remedy for the Ranch, Defendants contend that this Court lacks jurisdiction to hear those claims. (Doc. 6 at 5). Additionally, setting aside any contract or agreement, Defendants argue that the only duties Neal Ranch identifies are federal statutory or regulatory duties, which are not actionable under the FTCA. Again, because the Tucker Act would provide the remedy for the Ranch, Defendants seek dismissal from this Court. (*Id.* at 6).

The Ranch disagrees. It argues that all asserted claims "arise[] out of [the BIA's] duty to maintain its water conveyance infrastructure and not any contractual obligation to deliver that water." (Doc. 11 at 6). The Ranch attempts to distinguish its case from other cases where courts have found that government-run irrigation projects did not owe an independent duty to ensure equipment functioned properly so long as water was delivered as required by contract. (*Id.* at 6–13); *see Olson v. United States*, No. 1:14-CV-3166, 2015 WL 1865589 (E.D. Wash. Apr. 23, 2015); *Rice v. United States*, No. CV 06-10-GF, 2008 WL 11415915 (D. Mont. Jan. 8, 2008); *O'Toole*, 295 F.3d 1029. In response to Defendants' additional argument, Neal Ranch contends that Defendants are independently liable under Montana law—first, through a state-based duty to maintain water infrastructure, and alternatively, through a voluntarily assumed duty to maintain the Project's infrastructure. (Doc. 11 at 13–21).

Here, Defendants have the better argument. The gravamen of Neal Ranch's claims arises from conduct involving contractual water delivery obligations, not conduct that resulted in direct damage to the Ranch's property. Additionally, setting aside any contractual obligations, Neal Ranch identifies no state-law duty or voluntarily assumed duty in its Complaint or briefing that would apply to its claims and establish viability under the FTCA. Thus, the Court must dismiss the Ranch's Complaint for lack of subject-matter jurisdiction.

*A. The Gravamen of Neal Ranch's Claims*

The Court first finds that the gravamen of Neal Ranch's claims is contractual in nature—not tortious—because the Ranch fails to distinguish between direct harm to its property and failure to deliver water. As argued by Defendants, "[t]he germane [case law] on irrigation illustrates . . . two types of claims: (1) claims where a failed or deficient system causes direct harm to or physical intrusion onto a landowner's property and (2) claims where a landowner suffers loss because irrigation water was not delivered to the property." (Doc. 14 at 3). In cases where an irrigation system's poor condition caused flooding, erosion, or other physical damage, a state's common law negligence duty to maintain might apply as an independent duty to pursue under the FTCA. But if the system's condition simply prevented water from reaching a property—as is the case here—without causing other physical damage, the claim sounds in contract for non-delivery rather than tort for negligent maintenance.

For instance, in *Olson v. United States*, plaintiffs "engaged in business on a variety of agricultural and pasture lands located within the Wapato Irrigation District" in south-central Washington. 2015 WL 1865589, at *3. The Wapato Irrigation Project (the "WIP"), administered by the BIA, provided water to approximately 2,500 users throughout the irrigation season, including plaintiffs. *Id.* at *2. In 2013, one of the WIP's pump houses used to divert water to plaintiffs' property fell into disrepair. *Id.* at *2–3. Plaintiffs sued under the FTCA, alleging

that the WIP failed to make timely repairs to the defective pumps and pipes, which resulted in a "lack of adequate irrigation water . . . [and] caused [p]laintiffs to suffer crop losses." *Id.* at *3. In determining whether plaintiffs' complaint presented an actionable tort claim, the court found plaintiffs' theory—that the WIP's "negligent manner of maintaining its facilities deprived [p]laintiffs of necessary water thereby causing damage to their crops"—did not impose an independent tort duty separate from its contractual obligations to deliver water. *Id.* at *4–5. The court reasoned that if the water was delivered as required by the contract, then the WIP owed no independent duty to plaintiffs to ensure that the pump house equipment properly functioned. *Id.* at *5. Importantly, "[t]he WIP's alleged negligence did not result in any direct damage to [p]laintiffs' property[;] it only directly caused damage to WIP's property." *Id.* "Plaintiffs' claimed damages were only caused by the failure to supply irrigation water, a contractual obligation." *Id.* The court therefore concluded that it lacked jurisdiction under the FTCA, and plaintiffs were required to pursue their claims in the Court of Federal Claims. *Id.*

By contrast, *O'Toole v. United States* illustrates the type of tortious claim that would survive for jurisdictional purposes under the FTCA. In *O'Toole*, plaintiffs owned an 800-acre ranch in Nevada for raising livestock and hay production. 295 F.3d at 1031. The ranch's water and irrigation systems were supplied by the Reese River. *Id.* The BIA operated and maintained an irrigation system downstream from

plaintiffs' ranch. *Id.* The parties' dispute arose out of plaintiffs' allegations that the BIA failed to maintain its irrigation system which "caused water and sediment from the Reese River to back up onto and flood [plaintiffs'] property, resulting in over $346,213 in damage in lost crops and sediment removal." *Id.* at 1032. Although the *O'Toole* court did not need to examine whether plaintiffs' claims stemmed from tortious conduct or contractual obligations, the difference between the harm in *Olson* and the harm in *O'Toole* reveals that the type of harm matters when making an FTCA claim.

Property damage caused by affirmative tortious conduct, such as the flooding from poor maintenance in *O'Toole*, supports an independent tort duty, while economic losses from non-delivery of water sound in contract. This precise distinction was noted by the *Olson* court: "[u]nlike the government's duties in tort cases such as *O'Toole* . . . the WIP did not breach a non-contractual duty of care to avoid actively inflicting damage upon [p]laintiffs' property, such as by causing flooding to adjacent land." *Olson*, 2015 WL 1865589 at *5. The same distinction applies here.

On its face, the Ranch's Complaint alleges 12 counts of negligence and negligence per se. The Ranch lays out the appropriate legal elements: duty, breach, causation, and damages. (*E.g.*, Doc. 1 at 9 ((1) Defendants had a duty to manage, supervise, maintain, and repair; (2) Defendants breached their duty to maintain by

failing to complete repairs; (3) Defendants' negligence was the cause of the damage to the Ranch's herd and pasture; and (4) the Ranch suffered damages)). However, whether Neal Ranch has pled an actionable tort claim under Montana law turns on the "essence or gravamen of the claim rather than . . . the label provided by the plaintiff." *Rice*, 2008 WL 11415915, at *2; *see Saucier ex rel. Mallory v. McDonald's Rests. of Mont., Inc.*, 179 P.3d 481, 493–94 (Mont. 2008); *Quitmeyer v. Theroux*, 395 P.2d 965, 969 (Mont. 1964).

Here, the essence of Neal Ranch's negligence claims is that the BIA's negligent manner of maintaining its irrigation system deprived the Ranch of necessary water, thereby damaging its crops and livestock and causing depreciated property value. Although the Ranch labels its claims as negligence, the Ranch does not allege—like the plaintiffs in *O'Toole*—that the BIA actively inflicted direct, physical damage to the Ranch's property. Rather, at its core, the Complaint alleges that: (1) the BIA had an obligation to deliver water, (2) the Ranch fully paid for irrigation water, and (3) the Ranch suffered damages "as a direct result of the lack of irrigation water." (Doc. 1 at 3, 6). As this Court has stated, and as is the case here, "[t]he crux of all the claims . . . [was] the failure to deliver water" and therefore "the condition of the ditches [and canals] is irrelevant." *Rice*, 2008 WL 11415915, at *2. Were it not for the BIA's arrangement to deliver water upon receipt of payment, the Ranch would have no claims. Therefore, "[a]ny breaches of

obligations arising from that arrangement are . . . grounded in contract[,] not in tort." *Id.* Because the Tucker Act provides the appropriate legal avenue for the Ranch to seek redress for an alleged breach of contract, this Court lacks jurisdiction to hear the case. *See* 28 U.S.C. § 1491(a)(1).

*B. Independent Tort Duty Under Montana Law*

Setting any contractual obligations aside, the Court further finds that Neal Ranch fails to allege an independent tort duty under Montana law that would be actionable under the FTCA. While the FTCA allows private parties to bring a cause of action against the United States government, it does not create a cause of action. A plaintiff must bring a claim that exists under state tort law. 28 U.S.C. § 1346. In Montana, "[s]eparate tort liability depends on whether the breaching party violated a legal duty that would exist in the absence of a contract." *Dewey v. Stringer*, 325 P.3d 1236, 1239 (Mont. 2014). The key distinction between claims limited to contract remedies and those where tort recovery is available turns on whether the defendant violated a legal duty that exists independently of the contract. *Id.* ("There must be active negligence or misfeasance to support an independent tort claim.").

Defendants argue that any duty the BIA owes Neal Ranch, outside of contractual obligations, is based in federal statute and regulation, not state law. (Doc. 6 at 10; Doc. 14 at 7). Because federal statute and regulation would not create

a cause of action under the FTCA, Defendants argue that dismissal is the appropriate remedy. (Doc. 6 at 9–11).

Neal Ranch counters that "[w]hile federal law giving rise to the BIA's irrigation efforts does express a general duty to construct and maintain irrigation infrastructure, it does not define the nature of this obligation with any sort of detail and therefore does not pre-empt independently existing state-based duties of care." (Doc. 11 at 13–14). The Ranch goes on to argue that Defendants have a state-based duty to maintain its water conveyance infrastructure under Montana Code Annotated § 85-7-2211 (2025) ("Irrigation Ditches—Duties Relating To Safety"), § 70-17-112 ("Interference With Canal Or Ditch Easements Prohibited"), and Montana common law. (Doc. 11 at 15–19). Alternatively, it argues that Defendants have voluntarily assumed the duty to maintain the Crow Irrigation Project infrastructure. (*Id.* at 19–21).

Here, the Court again agrees with Defendants. Not only does Neal Ranch fail to identify a state-law duty in its Complaint, but it attempts to backfill its failure using Montana statutes and case law that have no application to its case. Nonetheless, the Court reviews the Ranch's arguments in turn.

*1.* Navajo Agricultural Products Industries v. United States

The Ranch first urges the Court to observe *Navajo Agricultural Products Industries v. United States*, 608 F. Supp. 3d 1060 (D.N.M. 2022) because it

"provides a useful framework for interpreting the Government's legal duty . . . in this case." (Doc. 11 at 14). In *Navajo*, the plaintiff operated a commercial farm outside of Farmington, New Mexico for the benefit of the Navajo Nation. 608 F. Supp. 3d at 1063. The defendant—the United States government—owned the Navajo Indian Irrigation Project, which operated an irrigation system and siphons and supplied water to the commercial farm. *Id.* In 2016, one of the siphon's pipes "ruptured, blowing concrete 100 to 200 feet away, damaging an overhead powerline, and spewing water rapidly into a nearby wash." *Id.* The plaintiff shut off the water, but its farmers had no way to irrigate for approximately one month until the defendants repaired the siphon. *Id.* The plaintiff alleged under the FTCA that the defendants owed it a duty to maintain the siphon with reasonable care. *Id.* The court agreed, finding that "New Mexico recognize[d] a private right of action for negligence in the construction and maintenance of dams, which control the flow of water and can cause serious damage to property, including crops, if not built and maintained properly." *Id.* at 1066 (citing *Little v. Price*, 397 P.2d 15 (N.M. 1964)).

Pursuant to the court's conclusion, Neal Ranch suggests that it, like the *Navajo* plaintiff, has alleged "that the government was negligent in maintaining the . . . canal"—a theory that should be construed as based in a state-law duty. (*See* Doc. 11 at 15). Not so. The Court agrees that *Navajo* provides a "useful framework" and exemplifies how a plaintiff might proceed with a tortious claim under the FTCA;

however, the case does not support the existence of a state-law duty specific to Montana or the facts of this case.[1] As such, Neal Ranch must still identify a specific state-law duty applicable to its case to proceed under the FTCA.

*2. Duties Specific to Montana Law*

Neal Ranch first identifies Montana Code Annotated § 85-7-2211. That statute establishes an affirmative maintenance obligation and a set of liability limitations for irrigation districts and private parties that own or operate irrigation infrastructure in Montana. Mont. Code Ann. § 85-7-2211. The obligations relate to safety. By defining what owners must do (maintain in good repair) and what they need not do (fence, secure, or restrict access), the statute creates a balanced framework that protects "persons and property from injury or damage" while recognizing the operational realities of irrigation systems. *Id.*

Although the statute might create an independent state-law duty, Neal Ranch neither pleads this duty in its Complaint nor demonstrates how Montana's interpretation of this statute applies to the facts of its case. (*See* Doc. 11 at 16). The Ranch identifies cases related to property damage; however, none of the cases involve analogous facts. Again, nearly every cited case concerns direct, physical

[1] *Navajo* supports the Court's conclusion that a tortious claim—unlike a contract claim—would involve direct, physical damage to a landowner's property. *Navajo*, 608 F. Supp. 3d at 1068 (plaintiffs allege direct, physical harm that "concrete blew 100 to 200 feet away with debris damaging an overhead powerline"). As discussed above, the gravamen of Neal Ranch's claims alleges no such tortious conduct.

damage to or intrusion on a landowner's property. (*Id.* at 16–17); *see Alexander v. McCauley*, 819 P.2d 176, 177 (Mont. 1991) (excessive water flow from a damaged irrigation ditch resulting in ground saturation and flooding); *Cate v. Hargrave*, 680 P.2d 952, 953 (Mont. 1984) (water rights case); *Covey v. Brishka*, 445 P.3d 785, 792–94 (Mont. 2019) (strict liability case involving an uphill 4.5-million-gallon man-made pond deemed abnormally dangerous); *Burk Ranches, Inc. v. Montana*, 790 P.2d 443, 444–45 (Mont. 1990) (monetary damages determination following the State's admission that it was liable for a collapsed dam's outwash); *Mattson v. Mont. Power Co.*, 291 P.3d 1209, 1213 (Mont. 2012) (landowners asserted trespass, nuisance, a taking of property, and breach of easements against dam operator); *Butala v. Union Elec. Co.*, 226 P. 899, 900 (water overflowed from ditch onto plaintiff's lands in freezing weather and destroyed crops); *Walsh v. E. Butte Copper Mining Co.*, 214 P. 641, 642–43 (Mont. 1923) (plaintiff sought to recover damages after defendant's dam failed, causing flooding and depositing of tailings, filth, and debris); *Frederick v. Hale*, 112 P. 70, 72 (Mont. 1910) (plaintiff alleged that defendant was negligent in the maintenance and use of a reservoir which washed away, releasing a large body of water that overflowed plaintiff's property and caused damage).

Neal Ranch next submits that Montana law statutorily provides a remedy for the interference of private ditch easements under Montana Code Annotated § 70-17-

112. (Doc. 11 at 8–12). However, as noted by Defendants, "[§] 70-17-112 has no application to this case because its only purpose is to protect the property interests of easement holders." (Doc. 14 at 11). The Court agrees with Defendants. (*See id.* at 11–12). The Ranch does not hold an easement, and therefore the applicability of § 70-17-112 is irrelevant to this case.

Ultimately, the Court is not persuaded that § 85-7-2211 or § 70-17-112 provides Neal Ranch with a viable tort theory under which "a private individual would be [liable] under like circumstances" in Montana. *Richard v. United States*, 369 U.S. 1, 6 (1962). Without identifying or pleading such a theory, Neal Ranch cannot proceed under the FTCA, and the Court therefore lacks subject-matter jurisdiction to hear the case. *See Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 508 (D.C. Cir. 2009) (The FTCA "does not create a cause of action against the United States; it allows the United States to be liable if a private party would be liable under similar circumstances in the relevant jurisdiction.").

*3. Voluntary Duty of Care*

Lastly, Neal Ranch argues that even if no state-based duty of care exists, "the BIA has . . . undertaken a voluntary duty of care," meaning that the Ranch's "interests are literally rooted in and fully dependent on the BIA upholding its duty of care to maintain the system delivering life-giving water, without which [its] farms and ranches cannot function." (Doc. 11 at 19, 21).

The voluntary duty of care, also known as the "good samaritan" doctrine, "establishes that the United States may be liable under the [FTCA] for the negligent provision of services upon which the public has come to rely." *Nichols v. Block*, 656 F. Supp. 1436, 1446–47 (D. Mont. 1987); *Indian Towing Co. v. United States*, 350 U.S. 61, 64–65 (1955). As found in *Nichols v. Block*, "liability may be imposed under the 'good samaritan' doctrine if the applicable state law requirements of the doctrine are satisfied." 656 F. Supp. at 1446. Montana recognizes the common law tort embodied in the "good samaritan" doctrine as set forth in the Restatement (Second) of Torts § 323,

> which imposes a duty of reasonable care upon one who affirmatively undertakes to render service to another. However, the Restatement only imposes liability for "physical harm resulting from a failure to exercise reasonable care to perform the undertaking, if (a) the failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking."

*Deschamps v. Farwest Rock, Ltd*, 474 P.3d 1282, 1288 (Mont. 2020). (quoting Restatement (Second) of Torts § 323). As such, "good samaritan" cases generally arise where negligently performed services are related to safety. *Love*, 915 F.2d at 1248.

Here, Neal Ranch's claims are for economic harm arising out of the alleged failure to receive irrigation water. Neither physical harm nor safety has been implicated and thus, the voluntary duty of care does not apply, and the Ranch cannot

proceed under the FTCA. For this reason, the Court again lacks subject-matter jurisdiction to hear the case.

## IV. Conclusion

In sum, because Neal Ranch has failed to identify a state-law tort duty imposed upon the BIA independent of its contractual or federal statutory obligations, no remedy is available to the Ranch under the FTCA. The Court therefore lacks jurisdiction to hear this case under Federal Rule of Civil Procedure 12(b)(1) and dismissal is appropriate.

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 5) is GRANTED. The Clerk of Court is directed to close the case.

DATED this 27th day of August, 2026.

Susan P. Watters

SUSAN P. WATTERS
United States District Judge